1             IN THE UNITED STATES DISTRICT COURT

2            FOR THE WESTERN DISTRICT OF MICHIGAN

3                    SOUTHERN DIVISION

4      UNITED STATES OF AMERICA,

5            Plaintiff,                No.  1:14cr6

6       vs.

7      DERIK EUGENE ROTHROCK,

8            Defendant.

9

10     Before:

11                      THE HONORABLE JANET NEFF,
                        U.S. District Judge
                        Grand Rapids, Michigan
12                      Monday, July 14, 2014
                        Sentencing Proceedings

13     APPEARANCES:

14

15                 MR. PATRICK MILES, U.S. ATTORNEY
                   By:  MS. TESSA HESSMILLER
16                 The Law Building
                   330 Ionia Avenue, NW
17                 Grand Rapids, MI 49501-0208
                   616-456-2404

18                      On behalf of the Plaintiff;

19                 FEDERAL PUBLIC DEFENDERS
                   By:  MS. SHARON A. TUREK
20                 50 Louis Street, NW
                   Suite 300
21                 Grand Rapids, MI 49503
                   616-742-7420

22                      On behalf of the Defendant.

23     REPORTED BY:  MS. KATHY J. ANDERSON, RPR, FCRR

24

25

1           July 14, 2014

2               PROCEEDINGS, 11:04 a.m.

3           THE CLERK:  All rise, please.  This court is now in

4   session.  Please be seated.

5           THE COURT:  Good morning, everybody.

6           MS. HESSMILLER:  Good morning, Your Honor.

7           MS. TUREK:  Good morning, Your Honor.

8           THE COURT:  This is the date and time set for

9   sentencing in case number 1:14cr6, the United States of America

10  versus Derik Eugene Rothrock.

11          Counsel, may I have appearances and introductions,

12  please.

13          MS. HESSMILLER:  Good morning, Your Honor.

14  Tessa Hessmiller representing the United States.  And I'm here

15  with Special Agent Kurt Schichtel from the FBI.

16          THE COURT:  Thank you.

17          MS. TUREK:  Good morning, Your Honor.  Sharon Turek on

18  behalf of Mr. Rothrock who is seated to my left.

19          THE COURT:  Thank you.  Also present in the courtroom

20  this morning is United States Probation Officer Anna Pakiela.

21          Mr. Rothrock appeared before Magistrate Judge Timothy

22  Greeley on March 7, 2014, and entered a guilty plea to a single

23  count superseding felony information with a supplement, as well

24  as with a forfeiture count, pleading guilty to the charge of

25  receipt of child pornography which is contrary to 18 U.S.C.

1    2252A(a)(2)(A), and 18 U.S.C. 2252A(b)(1).  The maximum

2    potential penalties for that offense include a 15-year

3    mandatory minimum sentence to a 40-year maximum sentence of

4    custody, as well as a maximum potential fine of $250,000.

5        In spite of the seriousness of this offense, it can be

6    fairly easily summarized as follows:  The offense behavior

7    involved the defendant communicating via text messaging on a

8    cell phone, as well as having sexual contact with girls he knew

9    to be 15 years old or younger.  In addition to the sexual

10   contact, he requested and they sent photos of themselves to him

11   of a sexual nature including photographs of their pubic areas

12   and of them fully naked.

13       His texts to these girls were of a very salacious

14   sexual nature.

15       The magistrate judge's report and recommendation was

16   adopted on March 27, 2014.  There is a plea agreement in this

17   case and I accept it at this time and I find that the charge to

18   which Mr. Rothrock entered a guilty plea adequately does

19   reflect the seriousness of his actual offense behavior.

20       There is also a detailed presentence report.

21       Ms. Hessmiller, does the government have any issues

22   involving the facts as recited in the report?

23       MS. HESSMILLER:  No, Your Honor.

24       THE COURT:  Ms. Turek, on behalf of the defendant, any

25   factual issues with regard to the recitation of the report?

1        MS. TUREK:  Other than what's already been noted, Your

2   Honor.

3        THE COURT:  Okay.  And those were worked out with the

4   probation officer, is that correct?

5        MS. TUREK:  That is correct, Your Honor.

6        THE COURT:  Thank you.  Mr. Rothrock, a couple of

7   questions for you.  Have you read the presentence report?

8        THE DEFENDANT:  Yes, Your Honor.

9        THE COURT:  And have you discussed it thoroughly and

10  carefully with Ms. Turek?

11       THE DEFENDANT:  Yes, Your Honor.

12       THE COURT:  And as you sit here in the courtroom this

13  morning, is there anything about the presentence report that

14  you either don't understand or about which you still have any

15  question?

16       THE DEFENDANT:  No, no, Your Honor.

17       THE COURT:  Now, Ms. Turek from the Federal Public

18  Defender office has been appointed to represent you.  Have you

19  been satisfied with the work that she has done on your behalf?

20       THE DEFENDANT:  Yes, Your Honor.

21       THE COURT:  Okay.  The presentence report contains a

22  calculation of the guidelines and the advisory guidelines

23  ranges as follows:  The offense level is calculated at 39, the

24  scoring in this case is a little bit unusual; although it is a

25  single count information, it does involve three separate

1    victims, and because of that, it was scored in three separate

2    segments.  But the bottom line is that the probation officer's

3    offense level, total offense level is 39.  Criminal History

4    Category is 5 owing to the sexual assault supplement, and those

5    numbers of course place the defendant in Zone D of the grid

6    where the incarceration range would be 360 months to life, but

7    because the statutory maximum here is 480 months, the effective

8    advisory guidelines range becomes 360 months to 480 months.

9    The supervised release range is five years to life, the fine

10   range is 25,000 to $250,000.  My understanding is that there

11   have been no requests for restitution by any of the victims.

12   Am I correct about that, Ms. Hessmiller?

13           MS. HESSMILLER:  Yes, Your Honor.

14           THE COURT:  Thank you.  And there is a mandatory

15   special assessment of $100.

16           Now, there are no objections to the scoring, is that

17   correct, Ms. Turek?

18           MS. TUREK:  That is correct, Your Honor.

19           THE COURT:  Thank you.  My calculation of the scoring

20   is just slightly different from that of the probation officer

21   as a result of my policy differences with the Sentencing

22   Commission.  I do not score the two-offense level enhancement

23   for use of a computer for reasons that I have explained on

24   numerous occasions, but essentially, because it is clear that

25   this offense is one that is in this day and age committed

1    exclusively, well, perhaps not exclusively, but almost, through

2    the use of electronic devices like computers and Smart phones

3    and so forth.  And so my calculation of the total offense level

4    is 37, which really doesn't have an effect on the overall

5    scoring.  I'm sorry, 38, I beg your pardon.  Is that right,

6    Anna, is it 37 or 38?

7                    PROBATION OFFICER:  It is, Your Honor, because an

8    additional unit is added due to the lack of disparity between

9    the three different offenses.  38 would be the correct.

10                   THE COURT:  Thank you.  So the, the change in the

11   offense level is to 38, Criminal History Category remains 5,

12   and the rest of the numbers are all the same.

13                   The custody advisory guidance, advisory range is 360

14   to 480 months; the range for supervised release is five years

15   to life; and the fine range remains at 25,000 to $250,000.

16                   There were no, nothing in any of the, in either of the

17   sentencing memos or anything else that I saw indicated any

18   request for a guidelines departure, is that correct,

19   Ms. Hessmiller?

20                   MS. HESSMILLER:  Correct, Your Honor.

21                   MS. TUREK:  Yes, Your Honor.

22                   THE COURT:  Thank you.  And I assume that the

23   government does move for the one offense level reduction for a

24   timely plea.

25                   MS. HESSMILLER:  Yes, Your Honor.

1          THE COURT:  Okay.  So we are left then with offense

2     level, advisory guidelines based on offense level 38, Criminal

3     History Category 5, incarceration 360 to 480 months, supervised

4     release five years to life, fine range 25,000 to $250,000.

5          Now, are counsel in agreement with the accuracy of

6     those calculations?

7          MS. HESSMILLER:  I'm a little unclear, Your Honor, on

8     the 38 versus 37 that Ms. Pakiela was addressing, the lack of

9     disparity because of the two victims.  Perhaps a little

10    clarification on the record would be helpful on that point.

11         THE COURT:  I think the probation officer can probably

12    explain that better than I can.

13         PROBATION OFFICER:  Based on the multiple count

14    adjustment that falls under counts on this case, he originally

15    received only two units as a result of the difference in

16    offense levels of -- the three counts technically had offense

17    levels of 40, 40 and 38, correct?  Yes.  But because of the

18    scoring change those numbers become less and it becomes an

19    offense level of 38 because there is now three units instead of

20    two.  It would have been two given the difference in the

21    scoring levels on each of those counts.

22         THE COURT:  Does that make sense?

23         MS. HESSMILLER:  It doesn't make sense to me because

24    I'm not that familiar with that provision of it.  But probation

25    has a grip on it it sounds like.  I don't know if Ms. Turek has

1  further questions on that or is satisfied with that

2  calculation.

3          THE COURT:  I'm kind of with you, Ms. Hessmiller.  I

4  would have deducted the two-offense levels from the total

5  offense level of 39 to get to 37.  But I'm not sure how that is

6  impacted by the multiple count adjustment, if it is.  And in

7  the end, the advisory ranges remain the same.

8          PROBATION OFFICER:  At 37, Your Honor, it would be 324

9  to 405.

10         THE COURT:  Okay.  Can you then perhaps help us

11  understand why it is 38 and not 37?

12         PROBATION OFFICER:  I have a printout if that would be

13  helpful for the parties to review.

14         THE COURT:  Okay.

15         PROBATION OFFICER:  But essentially with the multiple

16  count adjustment, we have to look at the difference between

17  each offense.  And when you calculate it out, it was assigned

18  two units at the original calculation when each count had the

19  additional two points, you'll see paragraph 91 where it's 40,

20  40, and 38 and it results in a number two units.

21         THE COURT:  Okay.

22         PROBATION OFFICER:  Because it's within a certain

23  amount from each one.  When you redo it with the different

24  scoring, each one of those at 38, 38 and 36, each qualifies for

25  a unit.  Because it's within the highest adjusted offense level

1    is 38, plus the three, puts it at the 41, minus the three for

2    38.  And this is not helping at all.

3            THE COURT:  I think, I think I see what you're saying,

4    though.  If we go back to paragraph 91.

5            PROBATION OFFICER:  Yes.

6            THE COURT:  And the 40, 40 and 38 adjusted offense

7    levels become 38, 38 and 36.

8            PROBATION OFFICER:  Correct.

9            THE COURT:  Because of taking out the computer use.

10           PROBATION OFFICER:  Correct.

11           THE COURT:  And then go from there.  So that leaves us

12   at --  at paragraph 92, the greater of the adjusted offense

13   levels becomes 38, right?

14           PROBATION OFFICER:  Yes.

15           THE COURT:  Then we increase that by two.

16           PROBATION OFFICER:  By the number of units.

17           THE COURT:  So it becomes 40.

18           PROBATION OFFICER:  No.  It becomes, there is three

19   units added in the recalculation instead of two.

20           THE COURT:  Why?

21           PROBATION OFFICER:  I'm finding you that --

22           MS. TUREK:  I think it's 3D1.4(a).

23           PROBATION OFFICER:  Yes.  Thank you, Sharon.  When you

24   look at 3D1.4, which is page 363 of the guidelines manual, the

25   number of units indicates how many, increase in how many points

1    are added to the offense level.  Two units you only add two

2    points, and two and a half to three units you would add three

3    points.

4            THE COURT:  Well, then how do we get from two units to

5    three units?

6            MS. TUREK:  I think it's two --  may I have a moment,

7    Your Honor?

8            THE COURT:  Certainly.

9            PROBATION OFFICER:  Your Honor, I think that's correct

10   that it is 37.

11           THE COURT:  Oh.

12           PROBATION OFFICER:  We have a program that calculates

13   it for us and I think it did not calculate it correctly.  So it

14   makes sense that it would be 37.

15           THE COURT:  Okay.  Let's go back then.  At 37 and

16   Criminal History Category 5, we are looking at 324, the

17   incarceration range would be 324 to 405, the supervised release

18   range remains five years to life, the fine range I think

19   remains the same --  no, it becomes 20,000 to 200,000.

20           Now, again, are we comfortable with the accuracy of

21   those calculations?

22           MS. HESSMILLER:  Yes, Your Honor, if the Court is

23   deleting the two points for the use of a computer.

24           THE COURT:  Yes.

25           MS. TUREK:  Yes, Your Honor.

1          THE COURT:  Thank you.  Ms. Turek, are you ready for

2     your allocution?

3          MS. TUREK:  I am, Your Honor.  Your Honor, as I

4     should, I'm going to be talking a lot about Mr. Rothrock.  But

5     before I do that, you know, that does not mean that he nor I

6     consider the offense, the conduct anything less than

7     reprehensible.  And it's detailed in the presentence report.

8          In this case, Your Honor, in a lot of ways it does not

9     surprise me that Mr. Rothrock appears here today,

10    unfortunately.  In the sentencing memo as in the presentence

11    report, there are some details as far as his upbringing, and I

12    did attach a report from Pine Rest report back when

13    Mr. Rothrock was 13 or 14 years old.

14         That I think just really touches the iceberg as far as

15    how bad things were for him when he was growing up.  This is

16    not a case of someone being in poverty, although there was

17    that; this is a case where someone was born into a family with

18    a history of mental health issues.  He was born into a family

19    who neglected him, who sexually abused him, who physically

20    abused him, all the, all the things that you don't associate

21    with a nurturing environment.

22         Unfortunately, many of the reports that could have

23    provided even additional detail are not available.  We had

24    contacted Child Protective Services.  We had lengthy

25    discussions with staff, and they were unable to find the

1    records, although they don't dispute them, they just no longer

2    have them.  We had also contacted the juvenile court, and they

3    also believe that they no longer had the files.

4         But we do have some of the information from earlier

5    presentence reports which Ms. Pakiela included in her report.

6    We have the Pine Rest records, and we have, at least I have had

7    the opportunity to discuss in more detail with Mr. Rothrock

8    some of his experiences as a child.  Although I must say that

9    he doesn't like to talk about it, and frankly, the only way I

10   was able to get more detail is, I know it was difficult for him

11   to talk about it, so I asked him to write me a letter and just

12   talk about some of the things that occurred in his lifetime.

13        And I think most troubling is the sexual abuse that

14   was going on within his family.  The most devastating thing was

15   to hear that Mr. Rothrock's own mother would masturbate him and

16   arouse him, which is something that I have never, as with the

17   many clients I have had and the horrendous circumstances that

18   they have had to live their lives, I have never had anything

19   like that or heard anything like that.

20        But it's more than that, Your Honor.  When

21   Mr. Rothrock was born it's clear that he suffers from ADHD.  It

22   was true back when the Pine Rest record was made when he was 14

23   years old; it's true today.  If you try to have a discussion

24   with Mr. Rothrock, you have to be aware of that, and you have

25   to go over things a number of times because it is very hard for

him to maintain focus.

There is substance abuse, alcohol, drugs.  There were, was mental illness.  His, and it's hereditary; both his maternal grandmother and his mother have a history of mental illness.

And so with that as a back drop, this young man was raised, born and raised into that household, although, he was abandoned a lot of the time too.  And that resulted in even being in more abusive, being in harms way any number of times because his mother would often leave him with strangers; even when she was in a relationship with an individual, his stepfather, for instance, Mr. Goudy, was abusive, was physically abusive.

So that's kind of the back drop.  And so with that, Mr. Rothrock has had the history that he has.

He understands that he has issues with sexual relationships and not being able to respect boundaries.  But I don't think he's understood how to deal with that.  He knows he needs treatment.  He also suffers from, as I've said, mental illness.  He suffers from depression on a regular basis still.  That was the circumstance back in 1994 when he was at Pine Rest, and that's still the situation today.

He has, he has some limitations on his ability to read and write.  And I think he's often been at a loss as far as how to live his life in a way that is appropriate and in a way

1        that's respectful to others.

2             He is, he understands that the Court has no choice but

3        to impose a significant period of incarceration today, and he

4        accepts that.  But he wants this Court to know, he wants you to

5        know that he is open to treatment, that he wants treatment, and

6        he wants to still try to make a life.  There was a two-year

7        period I believe from 2010 to 2012 where he was having some

8        success.  This was after he was released from prison after a

9        parole violation.  He got married, and he was doing, there

10       seems to be no criminal history.  He was working, and he held

11       that job for two years.  When his marriage broke up, it seems

12       like the wheels kind of broke off and Mr. Rothrock began using

13       drugs and alcohol on a more frequent basis, and all the past

14       history of his difficulty with sexual boundaries came back.

15       And it has led him to where he's at today.

16            I have asked this Court to consider a variance in this

17       case.  I think the abuse that he suffered as a child, in

18       addition to the other circumstances that were present, the

19       mental illness, the learning disability, the neglect and

20       abandonment by his parents, not just his mom at times but his

21       father has never been part of his life, all those circumstances

22       have contributed to the person that Mr. Rothrock is today.  I

23       think Mr. Rothrock himself is a strong individual.  I think

24       that he is sincere when he says that he wants treatment.  I

25       know that he has made attempts in the past to live a life that

1    society expects of him.  I think he can again one day do that

2    with the appropriate treatment, and I would ask this Court to

3    consider a variance from where we are at in the guidelines

4    right now, Your Honor, so that Mr. Rothrock will one day be

5    able to establish, reestablish himself in the community and

6    live a law abiding life and find some happiness for himself.

7    And I know that -- and by saying that I don't, again, want to

8    trivialize what occurred, but I would like to see at some point

9    Mr. Rothrock find some peace within himself and be able to live

10   on the outside and find some happiness after he's paid his debt

11   to society.  Thank you.

12            THE COURT:  Thank you, Ms. Turek.  I have to say that

13   it's difficult to disagree with your evaluation of how

14   Mr. Rothrock got here.  His history and background are truly

15   tragic.  But I want it to be clear as well that my concerns are

16   that he is here and he is who he is, and the dangers that he

17   presents are not theoretical.  I mean they are demonstrated.

18   And I just --  I do want the record to be clear that I, as I

19   said, I understand your position as his advocate, but also that

20   in terms of applying those circumstances to a potential

21   variance simply flies in the face of what I consider to be my

22   duty to protect the public, and particularly to young girls and

23   women.  The history that Mr. Rothrock presents with in terms of

24   his inability to control his behavior and make it conform to

25   even the most basic expectations is very frightening.  But I

do, I do credit your argument and understand what a difficult

position we're all in here.

MS. TUREK:  And I appreciate that, Your Honor.  And I

certainly am well aware that before you came out on the bench

here today that you would have those concerns.  I think anyone

reading Mr. Rothrock's criminal history certainly would.  And

they are well-founded; I can't disagree with that.  But I would

also ask you to consider that I think even the mandatory

minimum in this case, and I'm not suggesting that is where the

sentence should be, but even that sentence is a significant

period of time where hopefully Mr. Rothrock will be undergoing

a lot of treatment to address not just the substance abuse

issues, the mental health issues, the mental illness issues,

but the sexual behavior issues that have led to that history of

assault.

So in that vein, Your Honor, with that anticipation of

a significant period of incarceration to go with treatment, I

think a variance of some sort would still, might still be

appropriate in this case, even given his history, with the idea

that he's going to be serving a long time of incarceration.

But also that he will be undergoing treatment, and on

supervision would be under rather tight constraints, I would

imagine.  So with that I would ask the Court, I would ask you

to still consider a variance of some amount in this case.

THE COURT:  Thank you for your comments.

1    MS. TUREK:  Thank you.

2    THE COURT:  Mr. Rothrock, at this point, and I'm sure

3    Ms. Turek has talked with you about this, but at this point if

4    you wish to speak in your own behalf to tell me anything that

5    you think I should consider before imposing sentence, you

6    certainly are entitled to do that.  This is in fact your

7    sentencing, and if there's something, anything at all that you

8    wish to add, you may come to the podium with Ms. Turek.

9    THE DEFENDANT:  I can't explain what I did.  I am

10   sorry for what I did.  Just Saturday I just found out my

11   12-year-old daughter got raped.  I feel as a victim as well as

12   the predator in this situation.  I don't clarify or justify or

13   plead for any mercy or anything because what I did was wrong.

14   I'm sick and tired of living the way I live.  I thought I had a

15   right life when I was with my wife.  I just fell off.  There is

16   no explanation to it.  I mean I feel sorry for the victims.  I

17   apologize to them.  The people who are involved, time wasted in

18   the court, the people I hurt.  Mainly I let my daughter down.

19   My family won't talk to me no more because I'm admitting and

20   I'm putting everything out there as it was.  Tired of being in

21   denial about what my family is going through.

22   I'm 35 years old.  I mean, I should have grown up

23   before I went to prison the first time.

24   I don't know.  I'm sorry.  I mean I know that ain't

25   the best of words, the brightest words to say, but I really am;

for the first time, I am.  You know, I got a lot of the
burdens; I got a lot of problems going on in my life; I've got
a lot the hurts, habits, and hang ups and they have been there
for years, and I thought I had them under control but I guess I
didn't.  That's all I can really say.

THE COURT:  Well, what I can say is that everybody
involved in this case hopes that you can find the kind of
treatment that you need that will help you but make all of us
safer as well.  And I don't know what the outcome will be.  And
I don't know whether the treatment you receive will benefit
you.  But I certainly hope so.  Thank you.

THE DEFENDANT:  Thank you.

THE COURT:  Ms. Hessmiller.

MS. HESSMILLER:  Your Honor, Mr. Rothrock really
presents every parent's nightmare.  He's age 34 at the time,
prior convicted sex offender, goes out for a long weekend to
visit a friend somewhere in Michigan and in a span of four days
accumulates three different victims ages 12, 14 and 15, two of
whom he had sex with.

Mr. Rothrock knew he was a prior convicted sex
offender.  It's easily found on the Internet.  Anybody with a
Smart phone can figure out someone is a prior convicted sex
offender, and on this long weekend to this town in Michigan,
Mr. Rothrock used a false name, he set up a false Facebook
profile under that false name, and he told these three victims

1    that he was 19 or 21 years old.

2           The third victim, minor number 3, was the only reason

3    that this came to light because minor number 3 was sitting in

4    her bedroom talking on the phone texting and sending sexually

5    explicit pictures of herself to the defendant when a parent

6    figure walked in and minor number 3 threw the phone, the parent

7    picked it up and figured out what was going on.  From that

8    point onwards, the investigation was able to find minor number

9    1 and minor number 2 who had not come forward on their own.

10          So but for the parenting of minor number 3's parents

11   being able to find minor number 3's phone, these other victims

12   may not have even been known to law enforcement.

13          Even if Mr. Rothrock had been arrested and his phone

14   had been searched, he was using an application called Photo

15   Vault which is a secure way to password protect photos and even

16   provides a decoy password so that if someone asks for the

17   password to Photo Vault a user can give a decoy password and

18   show a separate set of photographs.  Inside that Photo Vault

19   account were not only the sexually explicit images of these

20   three victims but also of numerous other young women, unknown;

21   they were not pre pubescent but young women, possibly

22   teenagers, possibly younger or slightly older.

23          While Mr. Rothrock was talking to minor number 3 while

24   she was in her bedroom late on the night of July 22, 2011,

25   Mr. Rothrock asked her by phone, was she a virgin, and where

does she live.   The answers to both of which minor number 3

gave Mr. Rothrock over the phone.

This happened three months after the defendant was

acquitted at a criminal sexual conduct trial for having

multiple times having sexual intercourse with a 15-year-old

girl.

This is not an isolated incident.   This is not a

one-time act of misjudgment.   But this is a persistent,

selfish, narcissistic desire for sexual gratification from

easily manipulable young girls.   These are the type of girls

who told Mr. Rothrock that they were having trouble with their

family, were over the moon to be told that they were cute or

sexy by Mr. Rothrock over text message.   It didn't long for one

of the minors to say I love you, and Mr. Rothrock to say back

love you too.   One of the minors even texted to her friend, "He

thinks I'm cute.   Tehehe, I love him."   These were easy

pickings for Mr. Rothrock in his desire to fulfill his sexual

gratification from the easiest possible victims.

Maybe Mr. Rothrock was sexually abused, and the

government certainly doesn't argue to the contrary.   But now

Mr. Rothrock is sexually abusing others in multiples.

I know Your Honor has already made a decision on the

use of the computer.   But this case may be different from the

routine case of receipt of child pornography where everyone who

receives child pornography now receives it over the computer.

In this case, the guidelines were calculated using the production of child pornography guidelines under 2G2.1 rather than the receipt of child pornography guidelines under 2G2.2. And the use of the computer enhancement is slightly more specific in the production of child pornography guidelines under 2G2.1 in that they require in order for the two-point enhancement to apply, it requires the person who is sexually exploiting children to use a computer to entice and solicit a child into sexually explicit conduct.  And I point this out, Your Honor, because that enhancement applies here and I think it's important that it does apply here because the use of a computer really does enhance and broaden the reach of sex offenders like Mr. Rothrock.  Because children now carry around Smart phones or text message enabled phones, using a computer such as a Smart phone to get into a child's house, to get into a child's bedroom and get her to send sexually explicit photos back really does broaden the scope of sex offenders and it makes this crime so much easier to commit rather than grooming a child and having in-person sexual contact and access to a child.

        So in addition, Your Honor, Mr. Rothrock has had multiple opportunities to correct his course, not the least of which was an eight and a half year term in prison, followed by a parole violation for having a sexual relationship with a minor and prohibited sexual contact with children, followed by

1    three and a half more years in prison, and release from prison

2    in 2009.

3        Followed shortly by the CSC trial in 2012, and

4    followed immediately by these July 2013 offenses.

5        So, Your Honor, I would request that the Court does

6    include the two-point enhancement for use of a computer because

7    they are calculated under the production of child pornography

8    guidelines rather than the standard receipt of child

9    pornography.

10       In the alternative, Your Honor, I would ask that the

11   Court impose an above guideline sentence justified for the need

12   to specifically deter this defendant and generally deter others

13   from using the same means and mechanisms to sexually exploit

14   children.  I see Your Honor paging through the book.  Did you

15   need me to clarify anything about the, what I was referring to,

16   Your Honor?

17       THE COURT:  Well, what I guess what I would ask you,

18   and in my determination to reduce the scoring by the two

19   offense levels for enhancement for the use of a computer, which

20   is in line with my, as I indicated earlier, in line with my

21   policy that I set out pretty extensively in U.S. versus Inman

22   which was about a year or so ago, I guess what I would ask of

23   you is since this is a receipt case, whether you have some

24   authority for applying 2G, what is it?

25       MS. HESSMILLER:  2.1, Your Honor.  Yes, Your Honor, I

1    do.  And the presentence report actually in each of the

2    segments of calculating the guideline range refers to the cross

3    reference in 2G2.2(c) which states that, "If the offense

4    involved causing, transporting, permitting, or offering or

5    seeking by notice or advertisement, a minor to engage in

6    sexually explicit conduct for the purpose of producing a visual

7    depiction of such conduct or for the purpose of transmitting a

8    live visual depiction of such conduct, apply 2G2.1."

9         So even for the superseding information, which is

10   encompassed in paragraphs 68 through 65 of the presentence

11   report, it does note that the guidelines are calculated in this

12   case in all cases under 2G2.1.

13        And so the use of a computer enhancement that's

14   applied in paragraph 71 is actually the use of the computer

15   enhancement from the 2G2.1 child pornography production

16   section.

17        THE COURT:  Well, it's an interesting argument, and it

18   may well be the better application of the guidelines in this

19   case.  However, given the seriousness of the advisory range

20   already, which at 324 to 405 months is not significantly below

21   the 360 to 480 -- I wish we had had this.  I should have given

22   you the opportunity to respond earlier when I was talking about

23   the scoring.  But in any event, this is on the record and if

24   there is any question about it at some later time, then it can

25   be resolved then.  But I really, again, the guidelines which

1    apply in child pornography cases are so, in my view, excessive,

2    and we end up with these numerous enhancements that may or may

3    not be accurately applied to the behavior in question, I'm

4    going to deny the objection and leave the scoring as it is.

5    And in the event that there is some correction of that at some

6    higher level, that's fine with me.  But I do appreciate your

7    comments.  It's certainly food for thought.

8              MS. HESSMILLER:  Thank you, Your Honor.

9              THE COURT:  Thank you.  Well, the guidelines as they

10   have been outlined and argued here are in fact advisory, but I

11   do have to consult them and give them consideration in reaching

12   a sentencing decision which has to be reflective of the

13   underlying duty to impose a sentence which is sufficient but

14   not greater than necessary to comply with the purposes of

15   Section 3553(a).

16             And the sentencing calculus is in my view something

17   that reflects the law in many different contexts, and that is

18   that there must be some balance.  And the balance that the

19   statute talks about first starts with looking at the crime

20   itself, and its seriousness, and then at the person who

21   committed the crime.

22             And here child pornography offenses in terms of their

23   seriousness are almost always very serious offenses.  But the

24   facts of this case really do make it stand out from others.  In

25   the first instance, the defendant had met these young girls at

this apartment complex.  He contacted them via phone, his, the language in his texts were almost painful to read when you realize that these girls were the oldest was 15.  And the sexual contact, again, girls, the oldest of whom is 16.  He knew how old they were, approximately how old they were.  He admitted that in his plea.

His previous criminal sexual conduct conviction in state court leading to, what, six or eight years of incarceration, and very, very soon after his release on parole he was right back at the same kind of behavior, assaulting, sexually assaulting young girls.

So all of this behavior adds to the seriousness of this offense because it is reflective of the fact that Mr. Rothrock is prone to acting out on these, I don't know whether they are impulses or what they are, but he acts out on his --  his interest, his sexual interest in young girls.  And on a scale of one to ten in offenses for receipt of child pornography, this one is at ten or above.  I honestly have not seen one more serious than this.

So that's the offense.

The history and characteristics of the defendant really don't, don't balance that seriousness.  Often that happens.  We see a serious offense but a person whose life experience and behavior can balance that out.  And that's not the case here.  Mr. Rothrock is a 35-year-old married man, has

one child who is a young daughter whom he does not see.  He's a
9th grade dropout.  His criminal history started at age 13.
And I, again, as I indicated to Ms. Turek, I do not for a
moment downplay the difficulty of his life in which he had no
stability; his father was not in the picture, his mother was
mentally ill, he was sexually abused, he moved frequently,
there was contact with Child Protective Services, there was
family violence.  You can go on and on about Mr. Rothrock's
background.  It's tragic.

But you lay that alongside of the fact that his prior
sex offense for which he was supplemented occurred when he was
just 17.  And at that point he had had sex with a 13-year-old
girl, served eight years in prison and violated almost
immediately.

His life has been, as far as I can tell, out of
control pretty much his entire life.  The government's
sentencing memo concludes that Mr. Rothrock is a sexual
predator, and frankly, that's hard to refute on these facts.
That's a phrase that has been used in other cases.  I think
sometimes improvidently but in this case I think it is really
right on.  And there is violence throughout his history, both
against him and by him.  And so as Ms. Turek says, it's not
surprising that he should be here under these circumstances.
It's terribly sad.  But it is not at all surprising.

After that attempt at balance, the statute goes on to

talk about what purposes do we hope to serve with sentencing. And the three that stand out in this case, I think all of them really apply, all five of them apply, but the three that stand out are punishment, deterrence, and protection of the public.

Deterrence.  Mr. Rothrock needs to be removed from society to prevent him from preying on young girls.  We need to protect young girls from further crimes of Mr. Rothrock, and we need to punish him for the crimes that he is here for.  He obviously also needs treatment, and at some point I would hope that we could through treatment provide him with some glimmer of a respect for the law.

So the question of whether the guidelines sentence, the guidelines range is appropriate, is this a heartland, mine run case.  Do the guidelines reflect the statutory factors. And I don't think so.  I don't think this is a heartland case. I think this is a really extraordinary case.  And my own independent view of the sentencing factors and all of the sentencing file, starting with the original indictment, which I think had six counts, reduced down to the superseding or second superseding information suggests to me that the guidelines, as high as they are, at 324 to 405 months, really don't achieve the purposes set out in the statute.  And, you know, the request for a variance based on all of those factors in his background do not, cannot trump the fact that Mr. Rothrock is a serious danger to the public, and particularly to adolescent

girls. And, again, what I think is the most important statutory factor is protection of the public. I think we have got to remove him for a very long time from having any access to young girls.

And so I am going to depart above the guidelines for those reasons. And pursuant to the Sentencing Reform Act of 1984, it's my sentence that Mr. Rothrock serve 480 months incarceration to be followed by supervised release for the rest of his life subject to the standard conditions of reporting and remaining law abiding. You know, in terms -- I just want to go back one minute. In terms of the length of the sentence, I would point out that Mr. Rothrock is a young man. He's only 35 years old. And the harm, the pain that he has caused in that fairly short period of time suggests that the longer we can keep him away from society in general and girls in particular, the better we are.

So the supervised release subject to the standard conditions of reporting and remaining law abiding. There were some additional conditions. We provided an order regarding those for counsel and Mr. Rothrock to review prior to this hearing; both Mr. Rothrock and Ms. Turek have signed them indicating they reviewed them and understand them. And I'm signing that order for entry right now.

The fine in this case is waived. As indicated earlier, restitution is not an issue. I order the mandatory

1    special assessment of $100.

2        With regard to the Bureau of Prisons recommendation,

3    it's very clear that Mr. Rothrock needs intense programming in

4    many areas, including mental health and substance abuse

5    programming. He needs educational and vocational programming.

6    The latter he should at least make progress towards earning his

7    GED.

8        Is there any request for placement recommendation,

9    Ms. Turek?

10        MS. TUREK: No, Your Honor.

11        THE COURT: Thank you. The second superseding

12    information was a single count, but does the government move to

13    dismiss the counts of the underlying indictment?

14        MS. HESSMILLER: Yes, Your Honor.

15        THE COURT: That's granted. There is an indication in

16    the, I said second superseding felony information. It was just

17    a superseding, but there was a forfeiture allegation but I

18    don't see any order.

19        MS. HESSMILLER: Your Honor, I believe a preliminary

20    order of forfeiture was entered.

21        THE COURT: I don't even see that, Ms. Hessmiller.

22    Was it entered, Rick?

23        THE CLERK: That's correct. On April 7th.

24        THE COURT: April 7th, okay. We will need a final one

25    then at the government's convenience.

1          Are there any objections to the sentence that I have

2   just announced, anything that's not already on the record which

3   would argue that sentence should not be imposed as I've

4   indicated?

5          MS. HESSMILLER:  No, Your Honor.

6          THE COURT:  Ms. Turek.

7          MS. TUREK:  No, Your Honor.

8          THE COURT:  Thank you.  Mr. Rothrock, we do need to

9   talk about your appellate rights which have been primarily

10  waived in this case.  I'm going to look for that paragraph.  If

11  I recall correctly, it's pretty extensive.  It's paragraph 13

12  of your plea agreement.  It is a pretty extensive waiver of

13  your appellate rights with regard to the sentence I have just

14  announced.  But to the extent you retain any appellate rights,

15  there are two things you need to understand this morning.

16  First of all, I guess it's afternoon now, first of all, a

17  judgment is going to be entered on my sentence probably later

18  today, and you'll have 14 days from when the judgment is

19  entered to make up your mind whether you wish to pursue an

20  appeal.  And this is something you should carefully discuss

21  with Ms. Turek.  But you must tell her.  You must let her know

22  what you want to do with regard to an appeal.  Secondly, if you

23  do wish to pursue an appeal, Ms. Turek will have the obligation

24  to represent you in that proceeding going forward.  Do you

25  understand that?

1        THE DEFENDANT:  Yes, Your Honor.

2        THE COURT:  Okay.  Before I remand you to the custody

3    of the federal marshal I do want to say to you that imposing a

4    sentence like this under these circumstances is very difficult.

5    I'm sure not as difficult as it is for you facing a long, long

6    time.  But I hope that you can find some benefit, some

7    redemption in the time that you spend with the Bureau of

8    Prisons.  I honestly can't imagine living in your head.  I

9    think it must be very, very difficult.  And I hope that at some

10   point you can come to grips with that and be, as Ms. Turek

11   indicates, someone who can find some measure of joy in life.

12        I am sorry that our society has failed you all these

13   years, and we have.  I think we have had a number of

14   opportunities to make your life better and we didn't.  And now

15   we are left with someone who is, as I said earlier, very

16   dangerous.  And so I, I hope you can find some measure of

17   relief in the future.  If there is nothing further,

18   Ms. Hessmiller.

19        MS. HESSMILLER:  Nothing further, Your Honor.  Thank

20   you.

21        THE COURT:  Ms. Turek.

22        MS. TUREK:  No, Your Honor.  Thank you.

23        THE COURT:  The defendant is remanded to the custody

24   of the United States marshal, and we are adjourned.

25        THE CLERK:  All rise, please.  This court is now

1      adjourned.

2                  (Proceedings concluded, 12:12 p.m.)

REPORTER'S CERTIFICATE


        I, Kathy J. Anderson, Official Court Reporter for the
United States District Court for the Western District of
Michigan, appointed pursuant to the provisions of Title 28,
United States Code, Section 753, do hereby certify that the
foregoing is a full, true and correct transcript of the
proceedings had in the within entitled and numbered cause on
the date hereinbefore set forth; and I do further certify that
the foregoing transcript has been prepared by me or under my
direction.



                            /s/ Kathy J. Anderson
                            Kathy J. Anderson, RPR, FCRR
                            U.S. District Court Reporter
                            412 Federal Building
                            Grand Rapids, Michigan  49503